UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:15CV-00063-HBB

**POLLY ANNA PAYNE**                                                                    **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                     **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

The Commissioner of Social Security denied Polly Anna Payne's application for disability insurance benefits. Payne seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Payne (DN 11) and the Commissioner (DN 14) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15).

### FINDINGS OF FACT

Polly Anna Payne ("Payne") worked as an escrow analyst at U.S. Bank from roughly 1992 to 1998 (Tr. 43). Since leaving that position, Payne has worked very little, only cleaning a local church with her family for three hours a week (Id.). Payne applied for DIB benefits under Title II,

claiming that she became disabled on August 15, 2008, as a result of fibromyalgia, neuralgia, migraine headaches, depression, extreme lower back pain/sciatic nerve pain, heart palpitations, asthma, and arthritis (Tr. 145, 177). Her application was denied initially and again on reconsideration (Tr. 78, 94). Administrative Law Judge Mary S. Lassy ("ALJ") conducted a hearing in Paducah, Kentucky (Tr. 39). Payne attended the hearing with her attorney Russ Wilkey (Id.). Stephanie Barnes, an impartial vocational expert also appeared at the hearing (Id.). The ALJ issued an unfavorable decision on November 13, 2013 (Tr. 34).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Payne has not engaged in substantial gainful activity since August 15, 2008, her alleged onset date (Tr. 20). Second, Payne has the severe impairments of fibromyalgia, migraine headaches, asthma, and depressive disorder (Tr. 20). Third, none of Payne's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 21). Fourth, Payne has the residual functional capacity ("RFC") to perform light work with the following limitations:

> She can frequently push and/or pull with lower extremities. She can frequently climb ramps or stairs but can only occasionally climb ladders, ropes, or scaffolds. She can frequently kneel but can only occasionally stoop, crouch, or crawl. She should avoid concentrated exposure to extreme cold; wetness; vibration; and respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation. She should avoid all exposure to hazards such as moving mechanical parts and unprotected heights. She can understand, remember, and carry out simple and detailed instructions. She can sustain attention for simple and detailed tasks. She can interact frequently with coworkers and supervisors and can interact occasionally with the public. She can adapt to stress in an object-oriented setting.

(Tr. 22). Additionally, Payne has no past relevant work to consider (Tr. 32). Fifth and finally, considering Payne's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (Tr. 33).

Payne appealed the ALJ's decision (Tr. 14). The Appeals Council declined review (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Payne appealed to this Court (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

### B. Finding No. 5: Residual Functional Capacity

Payne makes two arguments against the ALJ's RFC determination. First, Payne makes a general claim that the ALJ's RFC is not supported by substantial evidence in the record (DN 11, at

p. 2). Second, Payne specifies that the ALJ failed to give proper weight to Dr. David Brey's treating physician report (Id.). The undersigned will address Payne's claim regarding Dr. Brey first.

### 1. The ALJ Afforded Proper Weight to Dr. Brey's Opinion

Payne believes the ALJ should have afforded Dr. Brey's opinion controlling weight because he is a treating physician (DN 11, at p. 10). Payne specifically argues that the ALJ made conclusory statements that Dr. Brey's opinion was not supported by the record as a whole but failed to recognize Dr. Brey's four years of face-to-face treatment for her ongoing fibromyalgia (Id. at p. 11). The Commissioner counters that the ALJ complied with the regulations in evaluating Dr. Brey's opinion (DN 14, at p. 10).

Under the "treating physician rule," an Administrative Law Judge must give a treating physician's opinion about a claimant's impairments controlling weight if that opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the claimant's case record. 20 CFR § 404.1527(c)(2); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). If the Administrative Law Judge determines a treating source should not receive controlling weight, she applies factors from the regulations to decide the appropriate weight to assign the opinion. These factors include the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion compared to the other evidence in the record, and the treating source's area of specialty. 20 CFR § 404.1527(c)(2)(i)-(ii), (c)(3)-(5); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). Nevertheless, the regulations do not require an exhaustive factor-by-factor analysis to satisfy the rule. See Francis v. Comm'r of Soc. Sec., 414 F. App'x 802, 804 (6th Cir. 2011).

The Administrative Law Judge is also required to provide "good reasons" in her decision for the weight given to the treating source opinion. 20 CFR § 404.1527(c)(2); Gayheart, 710 F.3d at 376. The Sixth Circuit has indicated that an Administrative Law Judge's reasons may be brief and can be given in an "indirect but clear" or "implicit[]" manner. Brock v. Comm'r of Soc. Sec., 368 F. App'x 622, 625 (6th Cir. 2010); Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 578 (6th Cir. 2009); Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 472 (6th Cir. 2006).

Here, the ALJ discounted three of Dr. Brey's proposed limitations: (1) that Payne might need to leave the workstation unexpectedly to lie down; (2) that Payne would have difficulty completing an 8-hour workday due to pain; and (3) that Payne is expected to miss work at least once to twice a week (Tr. 30). The ALJ explained that the severity of these three limitations was not supported by Dr. Brey's treatment records, which demonstrated that Payne's fibromyalgia has been successfully maintained on Cymbalta since 2011 (Id.). The ALJ additionally noted that there is no objective evidence that Dr. Brey's medication adjustments have not effectively controlled Payne's symptoms, and the severity of Dr. Brey's limitations is contradicted by Payne's testimony regarding her daily activities (Id.). Beyond those three limitations, the ALJ gave "great weight" to Dr. Brey's opinion regarding Payne's environmental limitations and included those in her RFC determination (Tr. 31).

Payne claims that Dr. Brey's opinion should be given controlling weight but focuses her argument on the factors listed in 20 C.F.R. § 404.1527(c). As mentioned above, when an Administrative Law Judge does not afford controlling weight to a treating physician's opinion, she must then consider the regulation factors. The undersigned finds the ALJ properly evaluated Dr. Brey's opinion. The ALJ identified that she could not give controlling weight to portions of Dr. Brey's opinion because these limitations were inconsistent with substantial evidence in the case

5

record. *See* 20 C.F.R. § 404.1527(c)(2). The ALJ, accordingly, was then required to examine the factors from 20 C.F.R. § 404.1527(c) and give "good reasons" for her decision.

Although the ALJ did not cite explicitly to the factors in the regulations, she mentioned information relevant to these factors in her analysis of Dr. Brey's opinion. For instance, the ALJ identifies Dr. Brey as Payne's treating rheumatologist and notes that treatment began in June of 2011 and continued approximately every three months (Tr. 25). The ALJ also cites to Dr. Brey's treatment from February of 2013 (Tr. 27). Further, the ALJ thoroughly addressed the consistency and supportability of Dr. Brey's statements, noting that Payne's fibromyalgia has been successfully maintained on Cymbalta and that Dr. Brey's limitations contradict Payne's testimony regarding her typical daily activities (Tr. 30).[1]

Payne takes issue with the ALJ's statement regarding her use of Cymbalta, arguing that she has not been cured of her fibromyalgia and continues to seek treatment for relief of her symptoms (DN 11, at p. 8). Dr. Brey's records indicate that for almost two years, Payne reported that taking Cymbalta helped her symptoms (Tr. 404, 406, 733). In February of 2013, Payne reported that Cymbalta was not working quite as well as it had in the past (Tr. 733). As a result, Dr. Brey switched Payne from Cymbalta to Savella (Tr. 735, 777). At the Administrative hearing four months later, Payne testified that after trying Savella and Lyrica she went back on Cymbalta because it "seemed to help better than either of the other two" (Tr. 51). The ALJ's RFC determination does not state that Dr. Brey cured Payne's fibromyalgia but, rather, states that her fibromyalgia "has been successfully maintained on Cymbalta. . . until only a couple of months

---

1 The ALJ noted Payne's ability to perform meal preparation and household chores for a family of five, homeschooling of her teenage son, and working three hours a week cleaning a church (Tr. 30).

6

before he issued the opinion" (Tr. 30). This statement is supported by substantial evidence in the record.

Payne's disagreement with the ALJ's evaluation of factors and determination that portions of Dr. Brey's report should be given no significant weight does not amount to reversible error. The ALJ's decision here is supported by substantial evidence and provides good reasons for discounting Dr. Brey's statements.

2. The ALJ's RFC is Supported by Substantial Evidence in the Record

In making the general argument that the ALJ's RFC determination is not supported by substantial evidence in the record, Payne lengthily recounts her testimony from the administrative hearing and the medical evidence in the record (DN 11, at pp. 4-16). Specifically, Payne copied Dr. Brey's assessment, Marcy Walpert's examination findings, and Nurse Estes' assessment. Payne takes issue with the ALJ's determination that the State agency opinions of Dr. Jane Brake and Dr. Humildad Anzures should be given great weight (Id. at p. 14-15).

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The Administrative Law Judge bases her RFC finding on a review of the record as a whole, including a plaintiff's credible testimony and the opinions from the plaintiff's medical sources. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). State agency physicians are considered experts in Social Security disability evaluation, and, therefore, Administrative Law Judges must consider findings and other opinions by State agency physicians as opinion evidence. 20 CFR § 404.1527(e)(2)(i). The opinions of State agency medical physicians "can be given weight only insofar as they are supported by evidence in the case record." SSR 96-6P, 1996 WL 374180, at *2 (July 2, 1996).

In certain circumstances, opinions from State agency physicians "may be entitled to greater weight than the opinions of treating or examining sources." Id. at *3. One such circumstance may occur, for example, when the "State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." Id. When a non-examining source has not reviewed a significant portion of the record, and the Administrative Law Judge fails to indicate that he has "at least considered [that] fact before giving greater weight" to the reviewing doctor's opinion, the Administrative Law Judge's decision cannot stand. Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009). But when the opinions of non-examining State agency medical/psychological advisors are consistent with the record, those opinions represent substantial evidence to support the Administrative Law Judge's decision. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180, at *2, 3; Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989).

Here, the ALJ gave "great weight" to the opinions of State agency psychological consultant Jane Brake, Ph.D., and State agency medical consultant, Humildad T. Anzures, M.D. (Tr. 31). The ALJ recognized that neither Dr. Brake nor Dr. Anzures had the opportunity to review Payne's entire record because additional evidence was submitted after their opinions (Tr. 31). Yet the ALJ found the additional evidence submitted after these opinions was "not inconsistent" with the mental limitations opined by Dr. Brake and the physical limitations opined by Dr. Anzures (Tr. 31).

Payne claims the ALJ offers no analysis about how and why the opinions from the State agency sources differ from the treating source (DN 11, at p. 15). Additionally, Payne believes that the 303 pages of reports and medical records submitted after Dr. Brake's and Dr. Anzures'

8

opinions are consistent with one another and support Dr. Brey's opinion (DN 11, at p. 15). As discussed above, the ALJ properly evaluated Dr. Brey's opinion and discounted the statements regarding Payne's inability to complete an 8-hour work day and likelihood of 1-2 absences a week.

Further, the ALJ thoroughly discussed the reports and records submitted after August of 2012 and found the evidence was consistent with both State agency physician opinions. For instance, the ALJ considered the evaluation submitted by Jessica Estes, APRN, in June of 2013. The ALJ did not give significant weight to the severe limitations from Nurse Estes' opinion because she only met with Payne three times before rendering the opinion and because her treatment notes indicated that Payne's mental impairments caused "relatively mild interference with [the claimant's] interpersonal/occupational functioning" (Tr. 31, 756).[2]

The ALJ also discussed Marcy Walpert's examination of Payne from August 16, 2012, which Dr. Anzures and Dr. Brake had the opportunity to review before making their determinations (Tr. 31, 82). The ALJ gave Ms. Walpert's opinion little weight because she made no observations to support that Payne could not tolerate the demands of a full time day-to-day work setting (Tr. 31). On the contrary, Ms. Walpert noted that Payne's mood was depressed and somewhat anxious but that she understood the instructions, cooperated with the exam, and put forth good concentration and effort (Tr. 493, 496).

Additionally, the ALJ properly evaluated Payne's credibility in making her RFC determination. The ALJ found that the objective treatment notes in the record failed to support

---

2 Nurse Estes' treatment notes are consistent with Dr. Brake's less severe limitations. Specifically Dr. Brake found Payne was "not significantly limited" in most areas and only opined that Payne is "moderately limited" in five areas: (1) the ability to carry out detailed instructions; (2) the ability to maintain attention and concentration for extended periods; (3) the ability to work in coordination with or in proximity to others without being distracted by them; (4) the ability to interact appropriately with the general public; and (5) the ability to respond appropriately to changes in the work setting (Tr. 91-92).

the severity of the limitations alleged by Payne (Tr. 29). Specifically, the ALJ noted that Payne's allegations regarding her pain from fibromyalgia were partially credible because she continued to perform household chores, home-schooled her son, and performed part-time work as a church janitor (Tr. 30). In giving some credibility to Payne's allegations of pain, the ALJ limited her to a light residual functional capacity (Tr. 30). As for Payne's allegations of psychological disability, the ALJ found that her minimal treatment and lack of objective evidence indicating social tolerance limitations also allow for work within the light residual functional capacity (Id.).

Finally, the ALJ's eleven page RFC determination comprehensively and accurately summarized the record evidence and opinions. The undersigned, therefore, finds the ALJ's residual functional capacity determination is supported by substantial evidence in the record.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:    Counsel